**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| VERONAFIERE S.p.A d/b/a VINITALY | ) | |
| Veronafiere, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. |
| FIERE ITALIANE, LLC d/b/a "FIERE | ) | |
| ITALIANE USA, LLC," MAURIZIO | ) | |
| MUZZETTA, and MOLLY MATELSKI, | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Veronafiere S.p.A. d/b/a Vinitaly ("Veronafiere"), by its attorneys, The Law Offices of Charles Chejfec, for its Verified Complaint against Defendants Fiere Italiane LLC d/b/a "Fiere Italiane USA, LLC" ("Fiere Italiane"), Maurizio Muzzetta ("Muzzetta"), and Molly Matelski ("Mateliski") (collectively "Defendants") hereby allege as follows:

## I.  NATURE OF THE ACTION

1.  This is a Verified Complaint for injunctive relief and damages arising out of Defendants' breaches of contract, unauthorized use of trademarks, deceptive trade practices, and unfair competition.

## II.  PARTIES

2.  Veronafiere is an Italian corporation with a principal place of business in Verona, Italy.

3.  Defendant Muzzetta is a resident of the State of Illinois.

4.  Defendant Matelski is a resident of the State of Illinois.

5.  Defendant Fiere Italiane is an Illinois limited liability company with its principal place of business at 222 W. Ontario Street, Suite 520 in Chicago, Illinois 60654. Muzzetta is the sole Manager of Fiere Italiane.

6.     Non-party United Experience LLC ("United") is an Illinois limited liability company with its principal place of business at 728 Anthony Trail in Northbrook, Illinois 60062. Piazza Italia, LLC, a Texas limited liability company, is the sole Manager of United. Muzzetta is the Manager of Piazza Italia, LLC.

7.     Non-party BolognaFiere USA Inc. ("BolognaFiere") is a New York Corporation with its principal place of business at 50 Broad Street, Suite 1904 in New York, New York 10004.

8.     Non-party MMMM Enjoy, LLC ("MMMM") is an Illinois limited liability company with its principal place of business at 222 W. Ontario Street, Suite 520 in Chicago, Illinois 60654. Matelski and Muzzetta have both been Managers of MMMM. Muzzetta is currently the sole Manager of MMMM.

III.    **JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1338 because this action arises under the Lanham Act.

10.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 USCS § 1367, as those claims are so related to the federal trademark claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court has personal jurisdiction over Fiere Italiane because it is an Illinois limited liability company with its principal place of business in Illinois.

12.     This Court has personal jurisdiction over Muzzetta because, among other things, he resided in Illinois.

13.     This Court has personal jurisdiction over Mateliski because, among other things, she resides in Illinois.

-2-

14.     Venue is proper in this Court pursuant to 28 USCS § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Illinois.

## IV.     STATEMENT OF FACTS

### A.     Background and Trademarks

15.     Veronafiere is a world-wide leader in organizing international exhibitions, and has been arranging trade shows and events since 1898. Veronafiere owns and operates Vinitaly, one of the world's leading international wine trade fairs, and Vinitaly.USA, its official United States extension.

16.     The first international use of the Vinitaly logos date back to 2004 in Shanghai. Additionally, the first overt use of the Vinitaly logos in the U.S. began no later than October 19, 2011 when Vinitaly organized a New York event.

17.     On March 26, 2019, Veronafiere became the registered owner of the "Vinitaly International Academy" trademark for Class 035 (Marketing and Advertising), Class 041 (Education, Entertainment, Sports, and Cultural Activities), and Class 043 (Food and Drinking Services) bearing U.S. Registration Number 5706080. "Vinitaly International Academy" was first used on September 2, 2016 and the trademark was registered in Italy on September 22, 2017, which serves as the date of first use in the United States.

18.     Veronafiere is the owner of the following registered trademarks associated with the Vinitaly brand internationally, which have been used in U.S. commerce:

a.     
        i.      Dates of issue: September 22, 2017; June 27, 2018; December 10, 2018
       ii.     Countries of registration: Italy, United States, European Union, China, and United Kingdom



b.
    i. Dates of issue: September 22, 2017; October 19, 2018; December 10, 2018
    ii. Countries of registration: Italy, United States, European Union, China, and United Kingdom



c.
    i. Dates of issue: February 16, 2018; September 7, 2020; January 13, 2021; August 25, 2023; November 21, 2023;
    ii. Countries of registration: India; Peoples Republic of China; Italy; United Kingdom; European Union

d. "Vinitaly World Tour"
    i. Dates of issue: May 5, 2020; July 21, 2020
    ii. Countries of registration: Italy, Singapore, Russia, Japan, South Korea and China



e.
    i. Dates of issue: January 28, 2021
    ii. Countries of registration: Italy

维尼大利

f.
    i. Dates of issue: July 21, 2020; September 28, 2020
    ii. Countries of registration: Republic of China

g. "Vinitaly World Tour"
    i. Dates of issue: July 19, 2020
    ii. Countries of registration: India



h.
    i. Dates of issue: June 21, 2022
    ii. Countries of registration: European Union

vinitaly

i.
    i. Dates of issue: September 8, 2022

        ii. Countries of registration: Japan

j. 
        i. Dates of issue: March 13, 2023
        ii. Countries of registration: Italy

19.    An application to register the "Vinitaly" brand image depicted below was filed on June 21, 2024 with the U.S. Patent and Trademark Office ("USPTO") bearing U.S. Serial Number 98612457. With no objections being filed, a Notice of Allowance was issued on July 22, 2025. The Statement of Use with the supporting specimen was submitted to the USPTO on January 14, 2026, and Veronafiere expects that the trademark registration for Class 035, Class 041, and Class 043 will issue at any moment. The submitted image is:



20.    Additionally, on January 12, 2026, Veronafiere filed applications for formal registration of the trademarks it has been using for many years in the United States commerce, including:

    a. "VINITALY" in numerous classes, including but not limited to Class 035 (including for Arranging and conducting trade shows in the field of wine, Conducting, arranging and organizing trade shows and trade fairs for commercial and advertising purposes, and other uses); Class 041 (including for Organizing exhibitions in the field of wine for cultural or educational purposes and Arranging and conducting of conventions in the field of wine, and other uses); and Class 043 (including for Providing facilities for fairs and exhibitions, and other uses).

        i. Date of first use for Class 035, Class 041, and Class 043 is October 17, 2011

    b. "VINITALY.USA" in numerous classes, including but not limited to the same classes described above.

        i. Date of first use for Class 035, Class 041, and Class 043 is October 20, 2024

c. The following image depicting the "Vinitaly.USA" logo in numerous classes, including but not limited to the aforementioned Classes 035, 041, and 043.



i. Date of first use for Class 035, Class 041, and Class 043 is October 20, 2024

21.  The "Vinitaly" and "Vinitaly.USA" trademarks and brands are valuable assets of Veronafiere, which it has been using for more than 20 years to promote Italian wine, food, and culture through events, marketing, and educational activities domestically and internationally.

**A.  The Services Agreement**

22.  On July 2, 2024, Veronafiere entered into a Services Agreement with Fiere Italiane. A copy of the Services Agreement is attached as Exhibit A.

23.  On April 28, 2025, Veronafiere and Fiere Italiane executed an Amendment to the Services Agreement, which modified Articles 3.3 and 4. A copy of the Amendment to the Services Agreement is attached as Exhibit B.

**B.  Provisions Governing Trademark and Brand Usage**

24.  The Services Agreement expressly states that Veronafiere is the exclusive owner of the Vinitaly and Vinitaly.USA trademarks and brand.

25.  In Article 3.6 of the Services Agreement, Fiere Italiane expressly acknowledges that Veronafiere is the exclusive owner of the Vinitaly trademarks and brand.

26.  Article 2.2 of the Services Agreement granted Veronafiere an exclusive appointment to plan, organize, and implement the Vinitaly.USA fair in Chicago, Illinois for four annual editions from 2024 through 2027.

27.  Amendment No. 1 to the Services Agreement replaced Article 3.3 to explicitly require that any promotional or marketing activities related to the Fair (Vinitaly.USA) must be

authorized by Veronafiere to safeguard the integrity of the Vinitaly brand and prevent any modifications or uses that could adversely affect its reputation or prestige.

28.     Article 10.2 of the Services Agreement requires that any communication to the public by Fiere Italiane using the Vinitaly brand must be submitted to Veronafiere for prior approval within 48 hours, excluding weekends and public holidays in Italy.

29.     Articles 3, 3.3 (as amended), and 3.6 of the Services Agreement grant Fiere Italiane a limited license to use the Vinitaly trademark for specific purposes related to the performance of the Services Agreement.

30.     Article 12.1 of the Services Agreement imposes confidentiality obligations on Fiere Italiane, requiring that information be considered "strictly confidential" and not be disclosed or used without Veronafiere's prior consent.

31.     The Services Agreement outlines protocols for the provision and agreement of the Event Plan and related documents for each year.

**C.     Provisions Governing or Prohibiting Competition**

32.     Article 11 of the Services Agreement imposes mutual exclusivity obligations, prohibiting Fiere Italiane from directly or indirectly engaging in or participating in any other fair or event substantially similar to Vinitaly.USA in the Midwest.

33.     Article 16.1 of the Services Agreement provides that the Services Agreement is entered into on the assumption that Muzzetta will assume and retain sole control of Fiere Italiane with full powers of ordinary and extraordinary administration for the entire term of the Services Agreement.

34.     Article 13 of the Services Agreement specifically requires Fiere Italiane to terminate the "International Wine Expo" and parallel initiatives that, by their nature and sector of reference, could potentially conflict with Vinitaly.USA for the duration of the Services Agreement.

35.     Article 13 of the Services Agreement further restricts the use of confidential information to prevent Fiere Italiane from engaging in competing businesses or using confidential information to gain a competitive advantage.

36.     Articles 2, 3.3 (as amended), and 13 of the Services Agreement provide that Fiere Italiane had an exclusive right to the Midwest territory for the use of Vinitaly and for supporting Veronafiere to promote and market Vinitaly throughout the United States of America.

37.     Article 13 of the Services Agreement effectively restricts Fiere Italiane from partnering with a competitor of Veronafiere.

38.     Article 7 of the Services Agreement provides that Fiere Italiane is liable for third-party conduct.

### D.     Governing Law for the Services Agreement

39.     Article 18 of the Services Agreement provides that the Services Agreement is governed by Illinois law.

### E.     Fiere Italiane and Breach of Exclusivity

40.     Fiere Italiane is an entity owned and operated by Muzzetta.

41.     Muzzetta also created a legal entity based in Singapore called "Fiere Italiane SEA PTE. LTD." ("Fiere Italiane SEA").

42.     Muzzetta was and is the sole owner of Fiere Italiane SEA.

43.     On or about September 9, 2025, Muzzetta caused Fiere Italiane SEA to sell a 30% interest in United to BolognaFiere – a direct competitor of Veronafiere.

44.     Veronafiere did not learn of the sale until September 17, 2025, when Bolognafiere issued a press release announcing its minority stake in United:

> BolognaFiere continues its internationalisation path and strengthens its position in the wine sector with the entry into the capital of the US company United Experience, controlled by Maurizio Muzzetta's FiereItaliane Sea. The Bologna-based exhibition group has in fact taken over 30% of the company that, with the new corporate structure, will organise from next year three international events dedicated to wine in three markets with high development potential - the United Kingdom, Vietnam and Mexico - under the Wine Experience brand.

45.     On the same date as the press release, Veronafiere contacted Muzzetta by telephone and inquired about Bolognafiere's acquisition.

46.     Muzzetta minimized BolognaFiere 30% stake in United stating that it would not interfere with or affect Vinitaly.USA, its events, or Fiere Italiane's contractual obligations under the Services Agreement. Muzzetta explained that United and BolognaFiere was focused on promoting and marketing in Vietnam, and that there would be no such activity in the United States or Midwest, which was the geographic region covered in the Services Agreement.

47.     After Muzzetta's explanation, Veronafiere turned its focus to the Vinitaly.USA Fair which was scheduled to take place in just a couple weeks, on October 5-6, 2025.

**F.      Muzzetta and ItalianExpo.us**

48.     On June 3, 2024, a trademark application for "ItalianExpo.us" was filed in Class 035 by Piazza Italia LLC.

49.     Piazza Italia LLC is a Texas limited liability company with its principle place of business located at 222 W. Ontario Street in Chicago, Illinois.

50.     The "ItalianExpo.us" trademark was approved on August 9, 2025.

51.     Muzzetta owns and manages Piazza Italia LLC. Matelski has also served as a manager of Piazza Italia LLC.

52.     On February 12, 2026, Muzzetta filed an assumed name change with the Illinois Secretary of State that Piazza Italia, LLC will be operating under the name "ItalianExpo.us".

53.     The "ItalianExpo.us" trademark and related business activities constitute a competing initiative to Veronafiere's Vinitaly brand and business.

**G.     Muzzetta's Post-Event Representations**

54.     Vinitaly.USA took place as scheduled on October 5-6, 2025.

55.     Following the October 5-6, 2025 event, Federico Bricolo, Chairman of Veronafiere, and Adolfo Rebughini, General Manager of Veronafiere, had an in-person conversation with Muzzetta.

56.     During this conversation, Muzzetta again stated that he had aligned with BolognaFiere because Veronafiere had not accepted his informal proposal to collaborate on wine events in Vietnam and Asia ("Asia Proposal").

57.     The Asia Proposal had never been presented formally, and no financial projections, economic terms, or business plans had ever been provided by Muzzetta or anyone at Veronafiere.

**H.     Evidence of Good Faith Communication Regarding New York Relocation**

58.     In a conversation in 2025, Veronafiere and Defendant Muzzetta casually discussed the option of hosting a Vinitaly.USA in New York City, New York.

59.     Muzzetta was open to the concept, but no decision was made.

60.     On October 23, 2025, Veronafiere received an email from Angela Gozzi ("Ms. Gozzi") of Manhattan Center, a venue under consideration by Veronafiere as a site for the Vinitaly.USA event in New York City.

61.     Ms. Gozzi's email stated that she had previously sent a proposal to Matelski for the event and was now sending the same proposal to Veronafiere with revised dates.

62.     Veronafiere then sent the following communication to Fiere Italiane on December 15, 2025:

> With regard to the venue and proposed dates, and without commenting here on the interpretation advanced in your letter, we nevertheless reiterate the previous interlocutions regarding a possible transfer of Vinitaly.USA to New York City, as discussed in Chicago, during which you verbally expressed openness to explore such relocation. As clear evidence of this mutual consideration, both Parties conducted scouting activities of potential venues in New York City, as the earlier discussions reflected a mutually beneficial exploration rather than any binding commitment.
>
> We remain available for a further alignment meeting—immediately after the seasonal break we will be in New York City on January 9 and 10—to address the outstanding elements of the Event Plan, including venue, dates, and any associated operational considerations.

**I.     Unauthorized Trademark Use**

63.     The Services Agreement required the parties within a designated time schedule to exchange information to conclude the financials for Vinitaly.USA 2025 and ramp up Event Plans for Vinitaly.USA 2026.

64.     In December of 2025, Veronafiere and Fiere Italiane were engaged in reconciling the October Vinitaly.USA 2025 edition as well as communicating about the Event Plan for 2026.

65.     During that time period, Veronafiere learned that Matelski was using the Vinitaly.USA logo for her business title on social media sites.

66.     In December 2025 – January 2026, Matelski's LinkedIn profile identified her with titles including Director of Buyer Relations, Programming & Partnerships for Vinitaly.USA.

67.     In addition to the title for Vinitaly.USA, Matelski's LinkedIn profile identified her with a similar, high-level title for United – the entity managed and controlled by Muzzetta through Piazza Italia LLC.

68.     These titles and representations were never known, approved, authorized, or ratified by Veronafiere.

-11-

69.     When Muzzetta wrote Veronafiere about a new investor on Jan 6, 2026, Veronafiere realized that Muzzetta was likely behind a bigger scheme and Matelski was likely a part of it.

70.     Veronafiere then began monitoring Matelski's use of its trademarks.

**J.      Unauthorized Use by Matelski**

71.     Veronafiere identified unauthorized use of its Vinitaly and Vinitaly.USA trademarks by Matelski in December 2025.

72.     Matelski publicly used Vinitaly.USA branding and affiliation in her professional profiles and social media communications without Veronafiere's authorization.

73.     Matelski's LinkedIn profile identified her with titles including Director of Buyer Relations, Programming & Partnerships for Vinitaly.USA, and Global Director of Programming & Partnerships for United, controlled by Muzzetta and operated for BolognaFiere.

74.     These titles and representations were never known, approved, authorized, or ratified by Veronafiere.

75.     Matelski published social media posts promoting global wine-related initiatives, including events in London, Vietnam, and Mexico, while presenting herself publicly under titles referencing Vinitaly.USA:





76. These posts created the appearance that such events were affiliated with, sponsored, and/or endorsed by Vinitaly.USA, that Vinitaly.USA was organizing or expanding into these markets, and that Matelski was acting with official authority on behalf of Vinitaly.USA. For example, the following posts utilize the Vinitaly trademarks:

a. In conjunction with MMMM and "Women in Wine and Spirits", Defendants posted or caused to be posted the following:



b.      In conjunction with promoting a "special feature in Decanter print edition",

Defendants posted or caused to be posted the following:



c.     In conjunction with an apparent public relations interaction with Trade Show Executive Magazine "spotlighting Vinitaly USA", Defendants posted or caused to be posted the following:



77. The postings falsely suggest that the events were affiliated with and sponsored or endorsed by Veronafiere. However, Veronafiere never authorized the use of its trademark in connection with those initiatives as required by the Services Agreement, nor did Veronafiere approve the use of those job titles or any role for Matelski.

78. Matelski is identified as Director of Buyer Relations, Programming & Partnerships for Vinitaly.USA and as a business partner of Muzzetta in the MMMM wine business, which is another competitor to Vinitaly.USA's women in wine program.

79. Matelski's conduct constituted unauthorized trademark use and misrepresentation of authority.

80.     Matelski's conduct also created a likelihood of confusion in the market regarding ownership, control, and official representation of Vinitaly.USA, and improperly leveraged Veronafiere's trademark to promote unrelated commercial initiatives for the benefit of Matelski and Muzzetta.

**K.      Unauthorized Use by Italian Chamber of Commerce**

81.     Muzzetta holds an executive position with the Italian Chamber of Commerce in Chicago, Illinois and Mid-West ("Italian Chamber of Commerce") that enables him to direct social media postings.

82.     In that capacity, Muzzetta caused the Italian Chamber of Commerce to post on LinkedIn about Vinitaly.USA, including highlighting "key partners of Vinitaly USA" and announcing an event called Vinitaly.USA 2026" without Veronafiere's pre-authorization.



83.     These posts were released at the direction of Muzzetta and/or Fiere Italiane.

84.     The unauthorized use by the Italian Chamber of Commerce violated Article 10.2 of the Services Agreement.

85.     Upon being informed about the unauthorized infringing posting and demonstrating ownership rights, the Italian Chamber of Commerce immediately removed the postings and later wrote a letter expressing future compliance.

L.     **Unauthorized Announcement of Chicago Dates**

86.     Veronafiere and Muzzetta were having discussions about Vinitaly.USA 2026 in accordance with the Services Agreement but no consensus was made as was required under the Services Agreement.

87.     Nonetheless, on January 5, 2026, without Veronafiere's authorization or approval, Fiere Italiane publicly announced dates for Vinitaly.USA 2026 in Chicago, Illinois.

88.     Fiere Italiane had no authority to publish these dates.

89.     This announcement constituted unauthorized use of Veronafiere's trademark and were misrepresentations to the public at large and caused actual confusion, constituting breach of the Services Agreement, trademark infringement, deceptive trade practices, and unfair competition.

**M.     Veronafiere's Formal Termination of the Services Agreement**

90.     On January 22, 2026, Veronafiere issued a formal Notice of Termination of the Services Agreement to Muzzetta and Veronafiere.  A copy of the Notice of Termination is annexed hereto and made a part hereof as Exhibit C.

91.     The Notice of Termination cited material breaches by Defendants, including failure to obtain prior approval for use of Veronafiere's trademarks, failure to maintain high integrity of the Vinitaly brand, unauthorized use of the Vinitaly and Vinitaly.USA trademarks by third parties, and breach of confidentiality obligations, among other breaches.

92.     The Notice of Termination also demanded that Defendants immediately cease and desist from any further use of the Vinitaly and Vinitaly.USA trademarks and all of Veronafiere's confidential information in all countries and for any and all purposes.

93.     The Notice of Termination demanded that Defendants collect from all staff and third-party providers all confidential information received regarding Veronafiere as it pertains to Vinitaly, Vinitaly.USA, Veronafiere, and the Services Agreement.

94.     The Notice of Termination demanded that Defendants remove all online references to Vinitaly.USA 2026.

95.     The Notice of Termination demanded that Defendants instruct in writing all staff and third-party providers whom they have allowed use the Vinitaly and Vinitaly.USA trademarks to cease and desist from any further use of the Vinitaly and Vinitaly.USA trademarks, cease and desist from use of all Veronafiere confidential information in all countries and for any and all purposes, and to remove all online references to Vinitaly and Vinitaly.USA.

96.     The Notice of Termination demanded that Defendants destroy all promotional material for Vinitaly.USA 2026.

97.     The Notice of Termination required written confirmation within five (5) business days of the date of receipt that Defendants had complied with these demands and ceased all infringing and breaching activities.

98.     Despite Veronafiere terminating the Services Agreement, Muzzetta refused to accept it and proceeded to manage and perform activities with a global scope, including the unauthorized use of Vinitaly.USA's trademark in connection with him operating and planning wine events in Chicago, Illinois, Vietnam, the United Kingdom and Mexico.

99.     Muzzetta did not distinguish the separate legal entities or operational structures when interacting with partners, sponsors, and institutional stakeholders. Instead, Muzzetta exercised authority, which he did not have, over Vinitaly.USA initiatives, further misleading the

public to confuse them and reinforce the false perception that he had personal control over the Vinitaly-related international expansion activities, which he did not.

100.    This unauthorized use by Muzzetta increased the risk that Veronafiere's proprietary information, relationships, and brand would be leveraged to benefit competing events, BolognaFiere, Muzzetta, and various other businesses in the wine industry that Muzzetta and Matelski controlled, owned, and/or operated.

**N.    Veronafiere's Official Announcement of New York Event**

101.    On January 22, 2026, following termination of the Services Agreement, Veronafiere formally announced that Vinitaly.USA would take place in New York City at Pier 36 on October 26-27, 2026, in cooperation with the Italian Trade Agency.

102.    Subsequently, the Italian Trade Agency learned of the unauthorized use of the Vinitaly trademark and requested that Muzzetta remove ITA from the Vinitaly.USA website.

**O.    Actual Confusion**

103.    The existence of two conflicting communications, one official from Veronafiere on the Vinitaly official website regarding the New York Vinitaly.USA 2026 wine fair and one unauthorized event from FiereItaliane on the Vinitaly.USA imposter website regarding a wine fair in Chicago, Illinois, both in October 2026, has created actual confusion in the marketplace.

104.    This confusion has affected exhibitors, wineries, importers, institutional stakeholders, and other industry participants regarding which event is official and authorized by Veronafiere.

105.    Specifically, Veronafiere had to clarify to the Sardinia and Lazio regional governments that the Vinitaly.USA event would take place in New York and that Veronafiere remained the official organizer and point of contact.

106.    Furthermore, non-party Fieramente, a logistics and shipping provider specializing in wine transport, has contacted Veronafiere directly to seek clarification as to whether it should be preparing shipments for two (2) separate events based on the two conflicting communications that Veronafiere was hosting a U.S. wine expo in 2026 in both Chicago, Illinois and New York City.

107.    Defendants' unlawful conduct has not only created actual confusion but will continue to create a likelihood of confusion.

**P.    Ongoing Infringement Post-Termination of the Services Agreement**

108.    Despite Veronafiere's formal Notice of Termination and cease-and-desist notice dated January 22, 2026, Defendants have continued to operate and control the website www.vinitalyusa.com and post information promoting Vinitaly.USA 2026 in Chicago, Illinois.

109.    Defendants have continued to maintain Vinitaly-branded email addresses.

110.    Defendants have continued to promote a Vinitaly.USA 2026 event in Chicago, Illinois.

111.    Defendants have continued to make representations to exhibitors and industry third parties that imply authorization to use the Vinitaly and Vinitaly.USA trademarks, all of which cause a likelihood of confusion and harm to Veronafiere.

112.    On February 19, 2026, Veronafiere discovered that the website www.Vinitalyusa.com displayed a countdown stating that exhibitor enrollment would open in three (3) days:



(VINITALYUSA, https://www.vinitalyusa.com/ (last visited Feb. 21, 2026))

113.    After the Notice of Terminations of the Services Agreement, Defendants have not had and do not have any authority to promote any wine fair, enroll exhibitors or make any representation or conduct any business in the name of Vinitaly.USA.

114.    Defendants' conduct constitutes ongoing trademark infringement and unauthorized commercial activity, and other ongoing violations all harming Veronafiere.

**Q.     Unauthorized Use of Vinitaly-Branded Email Addresses and Business Cards**

115.    Defendants used or caused to be used Vinitaly-branded email addresses, including "salvatore@vinitalyusa.com" with unauthorized individuals associated with Defendants.

116.    For example, the following images were taken of a business card obtained during a meeting between FiereItaliane and Fieramente, a partner of Vinitaly on or about January 26-27, 2026 during a Grandi Langhe event in Turin, Italy – after the Notice of Termination had been received by Defendants:



On January 29, 2026, the Fieramente representative messaged Veronafiere to inquire whether it was supposed to coordinate a quote for Vinitaly.USA with FiereItaliane's Salvatore Romeo.

117.    These individuals made representations to third parties, including Veronafiere's logistics providers, that implied authority to act on behalf of Vinitaly.USA.

118.    This conduct created the false impression of authorized usage of the Vinitaly brand and interfered with Veronafiere's commercial relationships.

-23-

**R.     Damages to Veronafiere**

119.    Veronafiere has suffered substantial and continuing damages as a result of the unauthorized conduct by Defendants.

120.    The unauthorized use of the Vinitaly and Vinitaly.USA trademarks and the operation of a misleading website have caused Veronafiere irreparable reputational harm and brand dilution.

121.    The unauthorized website promotes a Vinitaly.USA 2026 event in Chicago, Illinois while Veronafiere's official website promotes the official Vinitaly.USA 2026 event in New York City. For comparison, the unauthorized website displays the following:



(VINITALYUSA, https://www.vinitalyusa.com/ (last visited Feb. 21, 2026)) Meanwhile, the official website promotes the official Vinitaly.USA event in New York City:



(VINITALY, https://www.vinitaly.com/en/events/vinitaly-around-the-world/vinitalyusa-official/ (last visited Feb. 21, 2026))

122.    As of February 16, 2026, a UDRP Complaint has been filed by Veronafiere with regard to the improper use of www.vinitalyusa.com and for Veronafiere to recover ownership and control.

123.    This conflicting information will cause a likelihood of confusion among exhibitors, institutional stakeholders, and industry participants regarding which event is official.

124.    This confusion undermines Veronafiere's authority, credibility, and reliability as the exclusive organizer and owner of Vinitaly and Vinitaly.USA.

125.    Vinitaly is a premium global brand whose value derives from strict quality control, institutional partnerships, international reputation, and what the company has built over the past 128 years.

126.    Unauthorized use diminishes this value and risks association with events not controlled or approved by Veronafiere.

127.    The unauthorized promotion of a Vinitaly.USA 2026 wine fair event in Chicago, Illinois has diverted and interfered with Veronafiere's commercial relationships.

128.    Defendants' conduct has created diversions of exhibitors, regional governments, public institutions, and strategic partners.

129.    These entities are core clients of both Vinitaly and Vinitaly.USA.

130.    This constitutes unlawful diversion of customers and commercial interference.

131.    The harm extends beyond the current event cycle of 2026.

132.    The unauthorized conduct has impaired trust in the Vinitaly.USA and Vinitaly platform and in Veronafiere as a wine event organizer and may reduce participation in future editions.

133.    Long-term impacts on Veronafiere include but are not limited to reduced exhibitor confidence, institutional hesitation, reduced participation rates, and increased operational costs.

134.    Veronafiere has been required to undertake remedial measures, including but not limited to additional marketing campaigns, corrective communications, public clarifications, direct outreach to exhibitors and institutional partners, and digital advertising to reinforce official messaging.

135.    The remedial measures are extraordinary costs directly caused by Defendants' unauthorized conduct.

136.    Veronafiere has incurred substantial internal and external costs, including but not limited to legal counsel fees, drafting and enforcement of cease-and-desist notices, monitoring unauthorized trademark use, and internal coordination and crisis management.

137.    The internal and external costs are directly attributable to the misconduct of Defendants and their various affiliates, including but not limited to United and BolognaFiere.

138.    Defendants' unauthorized conduct represents a particularly serious form of trademark infringement and commercial deception.

139.    Without immediate court intervention, Veronafiere will suffer irreparable harm through the confusion to vendors who may have enrolled as early as Monday, February 23, 2026 for an unofficial, unauthorized, and violative event utilizing the Vinitaly.USA 2026 website and Vinitaly and Vinitaly.USA trademarks, branding, and the goodwill and consumer trust that comes with them.

140.    In addition, on February 24, 2026, Defendants sent notice to Veronafiere via email with an Event Plan and Sharing Plan attached for Vinitaly.USA 2026, including but not limited to a robust plan describing the intention to publish certain information to vendors, exhibitors, and other third parties of Vinitaly, Vinitaly.USA and Veronafiere in violation of Veronafiere's trademarks and brand and in complete disregard for the Notice of Termination of the Services Agreement. Additionally, Defendants indicated an intent to execute its plan and promote Vinitaly.USA 2026 to the public at large beginning on or before March 1, 2026.

141.    If Defendants proceed with their unauthorized plan, it will cause confusion to the public at large due to conflicting messages regarding the location and date of the Vinitaly.USA 2026 event, further souring the good will and trust that the public places in the Vinitaly brand.

**S.      Defendants' Breaches and Wrongful Conduct**

142.    Defendants operated a parallel initiative in violation of Article 13 of the Services Agreement.

143.    Defendants were repeatedly engaged in conflicts of interest and self-serving conduct.

144.    Defendants used confidential information obtained under the Services Agreement for unauthorized and competing business purposes, in breach of Article 13.

145.    Defendants partnered with BolognaFiere, a direct competitor of Veronafiere, in breach of the exclusivity provisions in Articles 2, 3.3 (as amended), and 13 of the Services Agreement.

146.    Defendants made unauthorized communications using social media accounts, including through the Instagram handle "@vinitalyusa", such as using the Vinitaly trademark and brand, without obtaining advance approval from Veronafiere as required by Article 10.2 of the Services Agreement and referenced Vinitaly.USA in official business titles, which were not only false, but also unauthorized.  Defendants continue to use the Instagram account to infringe on Veronafiere's trademark and promote the unauthorized event in Chicago:



147.    Defendants acted outside the scope of their authority and are liable for the unauthorized communications under Article 7 of the Services Agreement.

148.    Defendants acted outside the scope of their authority, abused their limited license of the Vinitaly trademark granted under Articles 3, 3.3 (as amended), and 3.6 of the Services Agreement.

149.    Defendants disclosed or used strictly confidential information without obtaining consent from Veronafiere, in breach of the confidentiality obligations in the Services Agreement.

150.    Muzzetta and Fiere Italiane failed to provide Veronafiere with Event Plan documents for 2025 as required by the Services Agreement.

### T.     Trademark Infringement and Unfair Competition

151.     Defendants have used the "Vinitaly" trademark and brand without authorization from Veronafiere.

152.     Defendants have used the "Vinitaly" trademark in connection with competing business activities and initiatives.

153.     Defendants' unauthorized use of the "Vinitaly" trademark is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendants' services.

154.     Defendants' creation and use of the "ItalianExpo.us" trademark and related business activities constitute unfair competition with Veronafiere's Vinitaly and Vinitaly.USA business.

155.     Defendants' conduct has caused and continues to cause irreparable harm to Veronafiere's trademark rights, business reputation, and goodwill.

156.     Defendants' conduct has resulted in the diversion of business opportunities from Veronafiere to Defendants and their related or affiliate businesses.

### U.     Alter Egos of Fiere Italiane

157.     Muzzetta created a legal entity based in Singapore called "Fiere Italiane SEA PTE. LTD." ("Fiere Italiane SEA").

158.     Muzzetta was and is the sole owner of Fiere Italiane SEA.

159.     All of Muzzetta's companies, including Fiere Italiane, United, and Fiere Italiane SEA (collectively, the "Three Egos") are alter egos of each other.

160.     All of the Three Egos were united in interest and ownership so as to eliminate any sort of corporate separation among them.

161.    In addition, the facts demonstrate that these companies were used solely to evade legal obligations, including Article 13 in the Services Agreement which prohibited Muzzetta from competing against Veronafiere.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**False Designation of Origin**
*15 U.S.C. § 1125(a)*
(Against All Defendants)

162.    Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

163.    Defendants used and continue to use a false designation of origin or description in connection with their services.

164.    Defendants used and continue to use the "Vinitaly" and "Vinitaly.USA" trademarks and brands without authorization.

165.    Defendants used and continue to use the "Vinitaly" and "Vinitaly.USA" trademarks and brands in the promotion of an event called Vinitaly.USA 2026 in Chicago, Illinois bearing the name of such trademarks and brands, which has registration for such event beginning on or about February 23, 2026.

166.    Defendants created and used the "ItalianExpo.us" trademark and related business activities that falsely suggest affiliation with or endorsement by Veronafiere.

167.    Defendants made unauthorized communications using social media accounts with names incorporating "Vinitaly," creating a false designation of origin.

168.    Defendants' use of the "Vinitaly" trademark and related trademarks constitutes a false designation of origin by suggesting that Defendants' services are affiliated with, sponsored by, or approved by Veronafiere when, in fact, they are not.

169.    Defendants' use is likely to cause confusion, mistake, or deception.

170.    Defendants' false designation of origin is likely to cause confusion among consumers as to the source, sponsorship, approval, or affiliation of Defendants' goods and services.

171.    Consumers are likely to be deceived into believing that Defendants' activities and services originate from or are associated with Veronafiere.

172.    The similarity between Defendants' use of "Vinitaly" and Veronafiere's trademarks, specifically for the promotion of a nationally marketed event of the exact same name, "Vinitaly.USA 2026" gathering exhibitors and vendors to promote Italian wine, food, and culture, increases the likelihood of confusion.

173.    Defendants' use affects interstate commerce.

174.    Defendants' unauthorized use of the "Vinitaly" trademark and the "ItalianExpo.us" business activities affect interstate commerce by competing with Veronafiere's national business activities.

175.    Defendants' activities involve the promotion and marketing of services across state lines.

176.    Veronafiere has been or is likely to be damaged by Defendants' conduct.

177.    Veronafiere has suffered and continues to suffer damages through loss of control over its brand, diversion of business opportunities, diminution in the value of the "Vinitaly" trademark, damage to reputation and goodwill, and costs of enforcement.

178.    Veronafiere is likely to suffer additional damages if Defendants' conduct continues.

## SECOND CAUSE OF ACTION
### Anti-Cybersquatting Consumer Protection Act ("ACPA")
### *15 U.S.C. § 1125(d)*
(Against All Defendants)

179.     Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

180.     Veronafiere owns the distinctive trademarks "Vinitaly" and "Vinitaly.USA" among other trademarks delineated *supra*.

181.     The trademarks are inherently distinctive in that "Vinitaly" is not a word that existed prior to the inception of the Vinitaly brand and would be deemed a "fanciful" mark – an invented or "coined" term that has no prior meaning and is created solely as a trademark.

182.     Defendants registered and/or used the domain name "vinitalyusa.com" during the term of the Services Agreement.

183.     On January 22, 2026, the Services Agreement was terminated in accordance with the Notice of Termination (Ex. C).

184.     Since the termination of the Services Agreement, and despite explicit direction to cease use of the trademarks of Veronafiere, Defendants have continued to use the "vinitalyusa.com" domain name in operation of the website to promote an unsanctioned, unapproved event utilizing the Vinitaly and Vinitaly.USA trademarks.

185.     Defendants' use of the "vinitalyusa.com" domain is in bad faith with intent to profit from the Veronafiere's trademarks.  The domain expressly includes the marks "Vinitaly" and "Vinitaly.USA" in the domain name itself; Veronafiere owns and operates the domain name "vinitaly.com"; since the Services Agreement has been terminated, Defendants have no Bonafide use of the domain name; and Defendants intend to divert consumers to the "Vinitalyusa.com" domain away from the official "Vinitaly.com" website.

186.     Defendants' ongoing use of the domain name "vinitalyusa.com" is unlawful and cannot constitute "fair use."

187.    Veronafiere has been or is likely to be damaged by defendants' conduct.

188.    Veronafiere has suffered and continues to suffer damages through loss of control over its brand, diversion of business opportunities, diminution in the value of the "Vinitaly" trademark, damage to reputation and goodwill, and costs of enforcement.

189.    Veronafiere is likely to suffer additional damages if defendants' conduct continues.

### THIRD CAUSE OF ACTION
**Violation of Illinois Deceptive Trade Practices Act**
*815 ILCS 510/2*
(Against All Defendants)

190.    Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

191.    Defendants engaged in deceptive trade practices.

192.    Defendants used the "Vinitaly" trademark and brand without authorization, passing off their Services and offerings as those of Veronafiere.

193.    Defendants utilize the "ItalianExpo.us" trademark and business to suggest affiliation with Veronafiere when no such affiliation exists.

194.    Defendants made unauthorized communications via social media accounts using Vinitaly-related names, causing likelihood of confusion as to the source, sponsorship, approval, or certification of their Services.

195.    Defendants caused likelihood of confusion or misunderstanding as to their affiliation, connection, or association with Veronafiere.

196.    Defendants failed to disclose the change of control of Fiere Italiane and their competing interests, engaging in deceptive practices.

197.    Defendants used confidential information obtained under the Services Agreement for competing purposes without disclosure.

198.    The conduct occurred in trade or commerce.

199.    Defendants' activities involve the promotion and marketing of wine, food, and cultural Servicess in Illinois and throughout the United States.

200.    Defendants' use of the "Vinitaly" and "Vinitaly.USA" trademark and the operation of the "ItalianExpo.us" business constitute trade or commerce.

201.    Defendants' activities under the Services Agreement and their competing initiatives constitute business activities in trade or commerce.

202.    The conduct was likely to deceive consumers.

203.    Defendants' unauthorized use of the "Vinitaly" and "Vinitaly.USA" trademark is likely to deceive consumers into believing that defendants' Services are affiliated with, sponsored by, or approved by Veronafiere.

204.    The "ItalianExpo.us" trademark and related business activities are likely to deceive consumers as to the source and sponsorship of the Services.

205.    Defendants' unauthorized communications via social media accounts are likely to deceive consumers regarding the source of the communications.

206.    Defendants' failure to disclose competing interests and use of confidential information are likely to deceive business partners and consumers.

207.    Veronafiere suffered damages as a result.

208.    Veronafiere has suffered damages through loss of business opportunities, diversion of customers, diminution in the value of the Vinitaly trademark and brand, damage to reputation and goodwill, and costs of enforcement.

209.    Veronafiere's damages are a direct result of defendants' deceptive trade practices.

**FOURTH CAUSE OF ACTION**
**Unfair Competition – Illinois Consumer Fraud and Deceptive Business Practices Act**

-34-

***815 ILCS 505/2***
(Against All Defendants)

210.    Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

211.    Defendants engaged in conduct that is unfair or deceptive.

212.    Defendants used the "Vinitaly" and "Vinitaly.USA" trademarks and brands without authorization to compete with Veronafiere.

213.    Specifically, after the termination of the Services Agreement, Defendants took additional affirmative steps to promote an unauthorized event in Chicago, Illinois utilizing the "Vinitaly" and "Vinitaly.USA" trademarks and brand names, including launching vendor registrations after receiving The Notice of Termination ending the Services Agreement.  Such event is in direct competition with the official Vinitaly.USA 2026 wine event, which will be held in New York City.

214.    Veronafiere engaged in a lawful business or profession.

215.    Veronafiere engaged in the lawful business of organizing and promoting wine trade fairs and events under the Vinitaly and Vinitaly.USA brands internationally.

216.    Defendants engaged in conduct that is likely to deceive the public.

217.    Defendants operated the website www.vinitalyusa.com promoting a Vinitaly.USA 2026 event in Chicago, Illinois without authorization.

218.    Defendants used Vinitaly-branded email addresses and business cards without authorization.

219.    Defendant Matelski used Vinitaly and Vinitaly.USA trademarks on social media posts and LinkedIn profiles without authorization.

220. The Italian Chamber of Commerce published social media posts using the "Vinitaly" trademarks at the direction of Defendants without authorization.

221. Defendants publicly announced Vinitaly.USA 2026 Chicago, Illinois dates without authorization.

222. Defendants made representations to exhibitors, institutional partners, and Services providers implying authorization to use the Vinitaly and Vinitaly.USA trademarks.

223. Defendants' conduct is likely to cause confusion or misunderstanding.

224. The existence of two conflicting communications, one official from Veronafiere regarding New York City and one unauthorized from Defendants regarding Chicago, Illinois, has created substantial confusion in the marketplace.

225. The market confusion has affected exhibitors, institutional stakeholders, and industry participants regarding which event is official and authorized by Veronafiere.

226. Veronafiere suffered injury as a result of Defendants' conduct.

227. Veronafiere has suffered reputational harm, loss of customer relationships, prospective damages, increased marketing costs, legal costs, and damages from false representations.

228. Veronafiere has suffered damages through loss of business opportunities, diversion of customers, diminution in the value of the "Vinitaly" and "Vinitaly.USA" trademarks and brand, damage to reputation and goodwill, and costs of enforcement.

## FIFTH CAUSE OF ACTION
### Breach of Contract—Prohibitions on Competing Ventures
(Against Fiere Italiane, LLC and Maurizio Muzzetta)

229. Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

230. On July 2, 2024, Veronafiere and Fiere Italiane entered into a Services Agreement.

231.    On April 28, 2025, Veronafiere and Fiere Italiane entered into an Amendment to the Services Agreement.

232.    The Services Agreement and Amendment constitute valid and enforceable contracts.

233.    A valid and enforceable contract existed between Veronafiere and defendant Fiere Italiane.

234.    Veronafiere performed its obligations under the Services Agreement and Amendment.

235.    Defendants breached Articles 2, 3.3, 11, and 13 of the Services Agreement.

236.    Article 11 of the Services Agreement imposes mutual exclusivity obligations, prohibiting Fiere Italiane from directly or indirectly engaging in or participating in any other fair or event substantially similar to Vinitaly.USA in the Midwest.

237.    Article 13 of the Services Agreement specifically requires Fiere Italiane to terminate the International Wine Expo and all related activities for the duration of the Services Agreement.

238.    Articles 2 and 3.3 of the Services Agreement grant Fiere Italiane a limited, exclusive right to use Vinitaly in the promotion and marketing of Vinitaly.USA and require Fiere Italiane to act in the best interest of Veronafiere.

239.    On September 9, 2025, BolognaFiere, a direct competitor of Veronafiere, acquired a 30% ownership interest in United, a company owned and controlled by Maurizio Muzzetta and/or Fiere Italiane.

240.    BolognaFiere is involved in wine events competing with Veronafiere, which constitutes a parallel initiative.

241. By allowing BolognaFiere to become a minority shareholder in United and allowing it access to the proprietary and confidential information and assets of the Vinitaly.USA operations that belong to Veronafiere, Defendants breached Article 13 of the Services Agreement.

242. Defendants knowingly placed Fiere Italiane in a conflicting role with Veronafiere by being an informal partner with BolognaFiere, Veronafiere's competitor.

243. Defendants failed to act in good faith and fair dealing in the situation.

244. Defendants' breaches caused damages to Veronafiere.

245. Veronafiere has suffered reputational harm, loss of customer relationships, prospective damages, increased marketing costs, legal costs, and damages from false representations.

### SIXTH CAUSE OF ACTION
**Breach of Contract—Communications, Promotional and Marketing Activities**
(Against Fiere Italiane, LLC and Maurizio Muzzetta)

246. Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

247. A valid and enforceable contract existed between Veronafiere and defendant Fiere Italiane.

248. Veronafiere performed its obligations under the Services Agreement and Amendment.

249. Defendants breached Article 10.2 of the Services Agreement and Amendment No. 1.

250. Article 10.2 of the Services Agreement requires that any communication to the public by Fiere Italiane using the Vinitaly brand must be submitted to Veronafiere for prior approval within 48 hours, excluding weekends and public holidays in Italy.

251. Amendment No. 1 to the Services Agreement amended Article 3.3 to explicitly require that any promotional or marketing activities related to the Fair (Vinitaly.USA 2026) must be previously authorized by Veronafiere to safeguard the integrity of the Vinitaly brand and prevent any modifications or uses that could adversely affect its reputation or prestige.

252. Defendants allowed Matelski to use "Vinitaly" and "Vinitaly.USA" trademarks without Veronafiere's approval.

253. Matelski's LinkedIn profile identified her with titles including Director of Buyer Relations, Programming & Partnerships for Vinitaly.USA without authorization.

254. Matelski published social media posts promoting global wine-related initiatives, including events in London, Vietnam, and Mexico, while presenting herself publicly under titles referencing Vinitaly.USA without authorization.

255. Defendants arranged for the Italian Chamber of Commerce to publish social media posts on LinkedIn about Vinitaly.USA 2026 without Veronafiere's pre-authorization. In fact, upon information and belief, Defendant Muzzetta specifically caused the social media post to be published through his position with the Italian Chamber of Commerce.

256. These posts were released at the direction of Defendant Muzzetta and/or Fiere Italiane.

257. On January 5, 2026, without Veronafiere's authorization or approval, Fiere Italiane publicly announced dates for Vinitaly.USA 2026 in Chicago, Illinois.

258. Defendants published promotional and marketing content on social media using the Vinitaly trademark without Veronafiere's review or approval.

259. Defendants' breaches caused damages to Veronafiere.

260.    Veronafiere has suffered reputational harm, loss of customer relationships, prospective damages, increased marketing costs, legal costs, and damages from false representations.

### SEVENTH CAUSE OF ACTION
**Breach of Contract—Unauthorized Trademark Usage**
(Against Fiere Italiane, LLC and Maurizio Muzzetta)

261.    Veronafiere repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

262.    A valid and enforceable contract existed between Veronafiere and Defendant Fiere Italiane.

263.    Veronafiere performed its obligations under the Services Agreement and its Amendment.

264.    Defendants breached Articles 3, 3.1, 3.3, and 3.6 of the Services Agreement and Amendment No. 1.

265.    Under the Services Agreement, Fiere Italiane received only a non-exclusive, non-transferable license to use the Vinitaly trademark solely in connection with Vinitaly.USA in the Midwest and solely for purposes set forth in the Services Agreement.

266.    Article 3.3 of the Services Agreement requires Fiere Italiane to use the Vinitaly brand name and trademark in accordance with the quality standards established by Veronafiere and only for the purposes set out in the Services Agreement.

267.    Article 3.6 of the Services Agreement acknowledges that the Vinitaly brand name and trademark are the exclusive property of Veronafiere.

268.    Amendment No. 1 to the Services Agreement replaced Article 3.3 to explicitly require that any promotional or marketing activities related to the Fair must be previously authorized by Veronafiere to safeguard the integrity of the Vinitaly brand.

269.     Defendants used the Vinitaly and Vinitaly.USA trademarks outside the scope of the Services Agreement.

270.     Defendants operated the website www.vinitalyusa.com promoting a Vinitaly.USA 2026 event in Chicago, Illinois without authorization after termination of the Services Agreement.

271.     Defendants used Vinitaly-branded email addresses, including salvatore@vinitalyusa.com, without authorization after termination of the Services Agreement.

272.     Defendants used Vinitaly.USA business cards without authorization after termination of the Services Agreement.

273.     Defendants allowed Matelski to use Vinitaly and Vinitaly.USA marks on social media posts and LinkedIn profiles without authorization.

274.     Defendants allowed the Italian Chamber of Commerce to publish social media posts using Vinitaly trademarks without authorization.

275.     On February 19, 2026, defendants operated the website www.Vinitalyusa.com displaying a countdown for exhibitor enrollment without authorization.

276.     Defendants made representations to exhibitors, institutional partners, and Services providers implying authorization to use the "Vinitaly" and "Vinitaly.USA" trademarks after termination of the Services Agreement.

277.     Defendants' breaches caused damages to Veronafiere.

278.     Veronafiere has suffered reputational harm, loss of customer relationships, prospective damages, increased marketing costs, legal costs, and damages from false representations.

## VI.     **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff prays:

1.    For a **FINAL JUDGMENT** that:

    a.  Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    b.  Defendants have violated Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d);

    c.  Defendants have violated Section 815 ILCS 510/2 of the Illinois Deceptive Trade Practices Act;

    d.  Defendants have violated Section 815 ILCS 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act;

    e.  The Defendants have engaged in Cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act;

    f.  Fiere Italiane and Muzzetta have breached the Services Agreement; and,\

    g.  The above acts were done willfully, and/or intentionally.

2.    For entry of an **ORDER** temporarily and permanently enjoining and restraining the Defendants, and their officers, agents, servants, employees, affiliates, attorneys, and all those in active concert or participation with any of them, from:

    a.  Using any reproduction, counterfeit, copy or colorable imitation of the Vinitaly Trademarks;

    b.  Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Veronafiere's business reputation or dilute the distinctive quality of the Vinitaly Trademarks;

    c.  Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized use;

    d.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by the Defendants are in any manner associated or connected with Vinitaly, or are sold, manufactured, licensed, sponsored, approved or authorized by Veronafiere; and,

    e.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action.

4.    For an entry of an **ORDER** transferring or canceling the Infringing Domain Name and any other domain names used by the Defendants to engage in unauthorized activities, to Veronafiere's control so they may no longer be used for unauthorized purposes.

5.      For entry of an **ORDER** that, upon Veronafiere's request, the Internet Registries shall take all actions necessary to ensure that the Infringing Domain Name be transferred and or disabled accordingly.

6.      For entry of an **ORDER** requiring the Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

7.      For all such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or associated packaging manufactured, sold or otherwise circulated or promoted by the Defendants

8.      For an **AWARD** of actual and contract damages suffered by Veronafiere, an award of all profits that Defendants have derived from using the Vinitaly Trademarks, as well as treble damages, attorneys' fees, costs, and interest to the full extent provided for by the Lanham Act, Illinois Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, Services Agreement, and Illinois law.

9.      For **COSTS OF SUIT,** and for such other and further relief as the Court shall deem appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all triable issues raised in the Verified Complaint.

Dated: February 26, 2026                               __/s/Charles Chejfec_____

Charles Chejfec
The Law Offices of Charles Chejfec
1431 Opus Place, Suite 600
Downers Grove, Illinois 60515
(630) 251-3035
charles@chejfeclaw.com

**<u>VERIFICATION</u>**

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing allegations in Plaintiff's Verified Complaint are true and correct.

Dated: February 26, 2026

                                          GIANNI BRUNO